IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOANN MARTIN, | ) |
| Plaintiff, | ) |
| v. | ) No. 15-cv-07805 |
| WAL-MART STORES, INC., | ) Judge Andrea R. Wood |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

While trying to reach an item on the top shelf of a freezer in a Wal-Mart store, Plaintiff Joan Martin stepped on a security rail. The rail collapsed. Martin fell and injured herself. Martin has sued Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), alleging that Wal-Mart was negligent in maintaining the security rail, failing to make certain that the customer area was free from dangerous conditions, and permitting the dangerous conditions to be present. Now before this Court is Wal-Mart's motion to bar Martin's expert witness from testifying at trial (Dkt. No. 38) and its motion for summary judgment (Dkt. No. 39). For the reasons explained below, Wal-Mart's motion to bar the expert is granted but its motion for summary judgment is denied.

## BACKGROUND

At the summary judgment stage, the Court views the record in the light most favorable to the plaintiff and draws all reasonable inferences in her favor. *See Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).

In April 2013, Martin went to a Wal-Mart store located in Bridgeview, Illinois. (Def.'s Response to Pl.'s L.R. 56(b)(3)(C) Statement of Additional Facts ("DRPSAF") ¶ 1, Dkt. No. 62.) While in a freezer section, Martin tried to get some fish sticks that were on the top shelf toward

the back of the freezer but could not reach them. (*Id.* ¶¶ 4, 5.) She looked around to see if there was anyone to help her but did not see anyone in the aisle. (*Id.* ¶ 6.) Martin then saw a security rail that ran parallel to the floor in front of the freezer section. (*Id.* ¶ 7.)

The security rail consisted of red or orange plastic sheathing, intermittently supported by metal bars affixed to the floor. (*Id.*) The security rail did not have a metal bar running through its entire length. (*Id.*) Rather, the plastic sheathing pieces covered the intermittent metal bars as well as the gaps between the metal bars. (*Id.*) This security rail was purportedly installed to prevent shopping carts from bumping into freezer doors. (Pl.'s Response to Def.'s Amended LR 56.1 Statement of Undisputed Material Facts ("PRDSUF") ¶ 34, Dkt. No. 54.) However, Martin was not aware of the intended function of the rail, there were no warning signs saying not to step on the rail, and Wal-Mart did not have any kind of policy prohibiting people from stepping on the rail. (*Id.* ¶ 16; DRPSAF ¶¶ 20, 21.)

Martin claims that she put her foot on the security rail to test it out before stepping on it—and the rail seemed sturdy. (DRPSAF ¶ 9.) She stepped on the rail, then stepped on the freezer door frame, reached up for the fish sticks, and, as she was coming down, stepped on the security rail again. (*Id.* ¶ 10; PRDSUF ¶ 17.) But on her way down, the rail underneath Martin collapsed and she fell. (DRPSAF ¶ 10.) She sustained various injuries as a result of her fall, for which she now seeks compensation.

After Martin fell, paramedics were called to the store. (PRDSUF ¶ 23.) Wal-Mart assistant manager Aracely Jerez also responded to the incident. (*Id.* ¶ 21.) Jerez asked Martin what happened but did not get a response. (*Id.* ¶ 22.) Jerez then took photographs of the place where Martin fell. (*Id.* ¶¶ 25, 33.) The photos show a freezer section consisting of several compartments, with a piece of cardboard covering one of the freezer doors, a piece of a plastic sheathing missing

2

from the security rail in front of that freezer door (with some of the underlying metal bar of the security rail not covered by the sheathing), and Martin laying on the floor. (*Id* ¶¶ 26, 27, 31; Ex. F to Def.'s L.R. 56.1 Statement of Undisputed Material Facts ("DSUF"), Dkt. No. 41-6.)

While the photos show that the security rail is missing a piece of the sheathing, during her deposition in connection with this case, Jerez testified that on the day of the incident, there were no broken parts of the security rail laying around. (PRDSUF ¶ 30; Ex. E to DSUF at 36, Dkt. No. 41-5.) Jerez also stated that the rail in the photos that she took looked the same as the rail was originally set up on the floor—although she later clarified that the rail actually should have a plastic sheathing covering the underlying metal bar. (PRDSUF ¶ 31; Ex. E to DSUF at 31, 33, 34.) Wal-Mart asset protection manager Willie Smith also testified that Jerez's photo depicts the way that the security rail at the Wal-Mart always appeared. (Ex. G to DSUF at 39, 40, Dkt. No. 41-7.) On the other hand, Martin testified that the security rail she stepped on did not have any gaps and that it broke when she stepped on it. (DRPSAF ¶¶ 10, 11.)

In connection with her case, Martin offers expert opinions and testimony from Lloyd M. Sonenthal, which Wal-Mart seeks to bar. Sonenthal has an educational background in engineering mechanics and law; he is a consulting forensic engineer. (Exhs. to Def.'s Mot. to Bar Pl.'s Expert at 1, 2, Dkt. No. 38-1.)[1] To prepare his opinions, Sonenthal reviewed photos, read deposition transcripts (including those of Martin and Jerez), searched the Internet to find renovation manuals for other Wal-Mart stores, and reviewed the description of an alternative security railing system (which had a metal bar running through its entire length) depicted in these renovation manuals. (*Id.* at 3–8, 38.) However, he did not visit Wal-Mart stores in connection with his research, did not

---

[1] Sonenthal also testified that he considers himself "self taught in the area of human factors," though he admitted that "[m]ost of the human factors people who testify are not engineers." (*Id.* at 43.)

see the security rail system at issue in the present case in person, did not conduct any testing on the materials, and did not take any measurements. (*Id.* at 35.)

Sonenthal has offered the following conclusions regarding the present case. First, he opines that the security rail "was foreseeably an available stepping point for a customer to obtain sufficient height to reach the upper shelf of the freezer unit to access product on the upper shelf." (*Id* at 8.) Second, based on to the alternative railing system design he discovered in the manuals on the Internet, he concludes that the security rail at issue in the present case "should have and could have . . . been adequate to support the weight of a customer." (*Id.*) Third, he suggests that if Wal-Mart did not want a customer to step on the security rail, Wal-Mart should have put a "NOT A STEP" or "DO NOT USE AS A STEP" sign on it, especially since a customer would not know that the rail is not supported by the metal bar throughout its length. (*Id.* at 8, 9.) Fourth, he concludes that "the plastic tubing invited the customer to stand upon it, without knowledge of the danger attendant thereto, and was therefore an unreasonably dangerous condition" that was known to Wal-Mart, but not the customer, and that was not discoverable by reasonable inspection. (*Id.* at 9.)

## DISCUSSION

### I.  Motion to Bar Expert

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). *See Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In short, Rule 702 has two over-arching requirements: expert testimony must be grounded in the methods and procedures of science and must assist the trier of fact to understand or determine a fact in issue. *See Krik*, 870 F.3d at 674.

Courts act as evidentiary gatekeepers, ensuring that an expert's testimony is based on a reliable foundation and is relevant to the task at hand. *Id.* Even if an expert's credentials and methodology are impeccable, courts must still look into whether or not the expert's testimony would be helpful to a jury. *See* Fed. R. Evid. 702. "Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under [Federal] Rule [of Evidence] 403." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). In other words, an expert must testify about something more than what is obvious to the layperson in order to be helpful to the jury. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001).

Wal-Mart argues that Sonenthal's "expert" testimony actually falls within the understanding of a lay person and thus would not be helpful for the trier of fact in evaluating the issues of the case. Martin counters that Sonenthal's testimony is helpful for understanding the issues upon which Sonenthal opines due to his experience as a forensic engineering consultant, as a lay juror would not have an understanding of engineering mechanics or knowledge in the area of testing strength and materials. But Martin does not explain how Sonenthal's expertise as an engineer informs his conclusions on such issues as whether something placed in front of a freezer

5

might invite a customer to step on it, whether one way to prevent this from happening would be to place a warning sign in the area, and whether a customer might not see that a security rail does not have a metal bar running throughout its entire length if such view is obscured by plastic sheathing. All of those observations are well within the ability of a lay person to consider and conclude upon on his or her own. As Sonenthal did no testing or measurements on the security rail at issue, his conclusions about the dangerousness of the rail are based on something that any lay juror could establish: it might be dangerous to have a security rail that appears to have a metal bar running through its entire length, when, in fact, there are parts of the rail that are constructed only of plastic.

Regarding his opinion that the security rail in the present case should have and could have been adequate to support the weight of a customer, Sonenthal's own testimony highlights that the opinion is nothing more than a simple suggestion that a security rail with a metal bar running through its entire length might be better at supporting a customer's weight than a rail only intermittently supported by metal bars. Sonenthal found renovation manuals for other Wal-Mart stores on the Internet, where an alternative design of a rail (which did have a metal bar running through its entire length) was described. (Exhs. to Def.'s Mot. to Bar Pl.'s Expert at 31.) He testified:

> I found it at least anecdotal to be significant that . . . Wal-Mart . . . in the[] rehab situations w[as] choosing a refrigerator case protection barrier which was significantly different than that [at issue in the present case] . . . in that it was a continuous metal rod from one end of the freezer system to the other end . . . .
>
> . . . Somewhere in the Wal-Mart system, somebody had concluded that this was a reasonably feasible method to protect the freezer unit. Was it because . . . they acquired historical information suggesting that the system confronting Mrs. Martin was not reasonably safe? I don't know for sure, but it's provocative.

(*Id.* at 38, 39.) Sonenthal performed no testing or other technical assessment to compare the security rail in the present case with the alternative design that he found on the Internet. Instead,

6

simply because the alternative design has a metal bar running through its entire length, Sonenthal hypothesizes that such a design would be "a safer condition, an improvement on the condition that . . . Martin found herself confronted with," in that it "would have been more likely than not supportive of the individual," though he could not "necessarily say that that [it] would have been the best design." (*Id.* at 31, 32.) A lay juror is capable of comparing, if needed, a security rail that is only partially supported by a metal bar with an alternative design that has a metal bar running throughout its entire length. *See Taylor v. Ill. Cent. R. Co.*, 8 F.3d 584, 585–86 (7th Cir. 1993) (holding that the district court correctly excluded expert testimony because a lay juror could understand "whether a pile of large rocks [wa]s harder to stand on than a pile of smaller rocks").

Therefore, the Court finds that Sonenthal's expertise would not help the trier of fact to understand the evidence or to determine facts at issue in the present case. His expert testimony is barred.

## II. Motion for Summary Judgment

Wal-Mart has also moved for summary judgment on Martin's common law negligence claim. To succeed in an action for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach. *See Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1178 (Ill. 2000). Wal-Mart argues that summary judgment should be granted in its favor because the dangerous condition of the security rail was open and obvious and, as a result, Wal-Mart owed no duty to Martin to warn or protect against such condition. Alternatively, Wal-Mart asserts that there was no defect in the security rail and thus it did not breach its duty or cause Martin's injuries. The Court addresses each argument in turn.

### A. Open and Obvious Hazard

Under the open and obvious doctrine, a possessor of land is not liable to his invitees for physical harm caused by a condition on the land whose danger is known or obvious to invitees, unless the possessor should anticipate that the dangerous condition will cause physical harm despite such knowledge or obviousness. *See Bruns v. City of Centralia*, 21 N.E.3d 684, 690–91 (Ill. 2014); *see also Belluomini v. Stratford Green Condo. Ass'n*, 805 N.E.2d 701, 704 (Ill. App. Ct. 2004). For a condition to be open and obvious, an invitee must reasonably be expected to discover it and protect himself against it. *See Buchaklian v. Lake Cty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 600 (Ill. App. Ct. 2000); *see also Bruns*, 21 N.E.3d at 690.

Whether a dangerous condition is open and obvious may present a question of fact for a jury to decide. *Bruns*, 21 N.E.3d at 690; *see also Belluomini*, 805 N.E.2d at 706. For example, the physical nature of the condition (*e.g.*, its visibility) is a factual question. *See also Belluomini*, 805 N.E.2d at 706. But where there is no dispute as to the physical nature of the condition, whether the condition is open and obvious is a question of law. *See id.*; *see also Bruns*, 21 N.E.3d at 690.

Here, Wal-Mart argues that Martin cannot recover for its alleged negligence because the security rail at issue presented an open and obvious danger—it was bright red, it was located directly in front of the freezer doors, and Martin saw the security rail before stepping onto it. Martin counters that while the physical presence of the security rail was open and obvious, its dangerousness due to its defective nature was not. According to Martin, the rail seemed sturdy (as she tested it out before stepping on it) but, unknown to her, portions of the plastic sheathing were unsupported by a metal bar. As a result, it was not obvious that the rail would collapse under her weight.

If Martin's claim were that she tripped over the security rail, whether or not the dangerous condition was open and obvious might be a question of law, as there is no dispute that the rail was brightly colored, it was right in front of the freezer, and Martin saw it. *See, e.g., Belluomini*, 805 N.E.2d at 707–08 (finding that a bicycle in a hallway was an open and obvious condition where plaintiff saw the bicycle before tripping over it). But that is not Martin's claim here. What Martin claims was dangerous is not the presence of the security rail, but that the rail could not support her weight because the plastic sheathing was unsupported by a metal bar for certain portions of the rail. Martin did not know of this danger prior to stepping on the rail. In fact, according to Martin, she tested the rail out prior to stepping on it and found it to be sturdy. The parties also dispute whether the security rail had a gap in it when Martin stepped on it, which is greatly pertinent to whether it would have been obvious that the plastic sheathing was unsupported by the metal bar for certain parts of the rail. As a result, summary judgment is not appropriate here. *See Buchaklian*, 732 N.E.2d at 600–01 (Ill. App. 2000) (holding that a defect in a floor mat was not open and obvious as a matter of law, as plaintiff did not see the defect until she tripped over the mat and it was reasonable to infer that the defect was difficult to discover).

### B. Security Rail Condition

The breach of duty and proximate cause elements of a negligence claim generally present questions of fact for the jury to decide. *See Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). However, proximate cause becomes a question of law "where there is no material issue of fact regarding the matter or only one conclusion is clearly evident." *Kleen v. Homak Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001).

Wal-Mart argues that there was no defect in the security rail and thus it did not breach its duty or cause Martin's injuries. In particular, Wal-Mart argues that there is no evidence that the

9

rail was a hazard in and of itself because (i) the rail was intended to protect the freezers, not as a step for customers; (ii) Jerez and Smith testified that they had never seen a customer using the rail as a step before; (iii) Wal-Mart employees were trained to assist customers in getting items that were out of customers' reach; and (iv) Martin put no effort into finding anyone to assist her. Relying on Jerez and Smith's deposition testimony that the rail looked the same at the time of the incident as when it had been installed and Jerez's photographs of the incident scene, Wal-Mart also contends that there is no evidence that the rail was defective or in disrepair on the day of the incident, or that it broke before or as a result of the incident.

For her part, Martin argues that there is a genuine issue of material fact as to whether the disrepair of the security rail, its placement directly in front of the freezers, or its inability to support customers' weight was a dangerous condition. In support, Martin points out various flaws in Wal-Mart's arguments. For example, Martin argues that Jerez and Smith were not working in the store when the security rail was initially installed and that there is no evidence that any of them inspected the rail before the incident—so they could not reliably compare the condition of the rail at the time of the incident to its condition at the time of installation. Martin also points out that Smith (and, to a lesser extent, Jerez) did not work in the Bridgeview Wal-Mart store for a long enough time to attest reliably that customers were not using the rail as a step. Martin further argues that she testified that the rail broke when she stepped on it, and that it is reasonable to infer that the broken rail pieces might have been removed before Jerez took her photos because the photos also show a broken freezer door but no broken glass around the door.

The Court finds that there is a material issue of fact regarding the security rail's condition at the time of Martin's fall. For example, it is unclear whether or not the rail actually broke underneath Martin. In addition to the arguments raised by Martin, the Court also notes that it is

unclear whether or not pieces of the broken rail simply landed in an area not captured in Jerez's photos (and not noticed by Jerez). Jerez's testimony on the issue is also not as clear as Wal-Mart paints it to be—while Jerez testified regarding the missing piece of sheathing in her photos that, "[t]hat's the way it was set up on the floor," she also testified that prior to the date of the incident she observed the metal bar being covered with the plastic sheathing, that the way the rail appears in her photos was not the way it was supposed to look, and that it was supposed to have a plastic sheathing covering the metal bar. (Ex. E to DSUF at 31, 33, 34.) Because there is an issue of material fact regarding the security rail's condition at the time of the incident, Wal-Mart is not entitled to the summary judgment.

## CONCLUSION

For the reasons stated above, Wal-Mart's motion to bar Sonenthal from testifying as an expert witness (Dkt. No. 38) is granted, but Wal-Mart's motion for summary judgment (Dkt. No. 39) is denied.

ENTERED:

Dated: December 18, 2017

_____
Andrea R. Wood
United States District Judge